IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANTHONY CORDOVA,

    Petitioner,

v.                                                                                  No. 2:22-cv-00479-JB-JHR
                                                                                     Re: No. 2:16-cr-01613-JB-JHR-11

UNITED STATES OF AMERICA,

    Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the undersigned on Anthony Cordova's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Petition"). [Doc. 1]. Cordova seeks relief from his convictions under 18 U.S.C. § 1959(a)(1), (2) ("the racketeering charge") and 18 U.S.C. § 924(c), (j)(1) ("the firearm charge"). District Judge James O. Browning referred the § 2255 Petition to me on August 25, 2022. [Doc. 3]. The United States of America filed a response, [Doc. 9], and Cordova did not file a timely reply. I have reviewed the briefing, relevant law, the record in 22-cv-00479, and the record of Cordova's convictions in 16-cr-01613. I recommend that the Court grant in part and deny in part the § 2255 Petition, affirming Cordova's § 1959(a)(1), (2) conviction and vacating his § 924(c), (j)(1) conviction.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

A grand jury indicted Cordova for the murder of Shane Dix on behalf of a member of the Syndicato de Neuvo Mexico gang ("SNM") in violation of the Violent Crimes in Aid of

1

Racketeering Act ("VICAR"), 18 U.S.C. § 1959(a)(1), (2). [16-cr-01613 Doc. 2, at 50].[1] The racketeering charge incorporated by reference New Mexico's murder and accomplice liability statutes, NSMA 1978, §§ 30-2-1 and 30-1-13. *Id.* A superseding indictment added a charge under 18 U.S.C. § 924(c), (j)(1) for knowingly carrying and using a firearm in relation to a "crime of violence" and causing the death of someone in a manner constituting murder under 18 U.S.C. § 1111(a). [Doc. 372, at 53].

The prosecution argued at trial that Cordova and Mario Montoya accepted heroin and cash from SNM member Christopher Garcia as payment for shooting Dix to death. *Id.* at 22–23. The principal evidence explaining the sequence of events came from the testimony of Montoya and FBI agent, Brian Acee.[2] Acee secured Montoya's cooperation after arresting him for drug trafficking. [Doc. 1051, at 11]. Montoya testified that Garcia proposed to hire him to kill Dix. *Id.* at 23. Owing Garcia a considerable drug-related debt, Montoya agreed. *Id.* at 24, 122. Garcia then grew frustrated with Montoya's lack of progress and hired Cordova to partner with Montoya. *Id.* at 24. Montoya and Cordova later approached Dix under the pretense of a drug buy and followed him when Dix left to retrieve a package from his supply; then Cordova shot and killed him. *Id.* at 25–26. After the killing, Garcia paid both Cordova and Montoya. *Id.* at 27.

After the close of evidence, the Court delivered the final jury instructions. The jury heard again the charges from the indictments. [Doc. 880, at 22]. The instructions then explained that to be guilty of the racketeering charge, Cordova had to have murdered Dix either in exchange for "a promise or agreement to pay anything of pecuniary value" from a "racketeering enterprise," or to

---

[1] From here through the rest of these proposed findings and recommended disposition, record cites are to 16-cr-01613 unless indicated otherwise.

[2] The jury heard from several other cooperating witnesses, FBI agents, and law enforcement officials who described SNM's criminal operations and/or implicated Petitioner. [Doc. 1051, at 15–68]. The jury also received an audio recording which the prosecution described as Montoya and Garcia acknowledging Petitioner's participation in the murder. *Id.* at 106–07. I do not discuss this evidence in detail as it does not change the analysis of the claims in the § 2255 Petition.

2

gain entrance to or maintain or increase his position in such an enterprise. *Id.* at 24. For the firearm charge, Cordova had to have used or carried a firearm during and in relation to his racketeering crime by murdering Dix with it. *Id.* at 39.

The instructions also stated that for the prosecution to satisfy the included element of murder, it had to prove beyond a reasonable doubt either first- or second-degree murder pursuant to New Mexico law. *Id.* at 35. Specifically, Cordova must have either deliberately intended to kill Dix or known that his acts would create a "strong probability" of Dix's death or great bodily harm. *Id.* The instructions defined "deliberate intention" as the state of mind of arriving at or determining upon a result after careful thought and consideration. *Id.* The instructions were clear that the jury had to find Cordova not guilty if it did not believe beyond a reasonable doubt that he committed either of these forms of murder. *Id.*

The jury returned guilty verdicts. [Doc. 890]. It found Cordova guilty of "violent crimes in aid of racketeering in the murder of [Dix], as charged in Count 2," and that Cordova's "general purpose in committing murder was as consideration for a promise or agreement to pay anything of pecuniary value from the charged enterprise." *Id.* at 1. The jury did not find, however, that Cordova had acted to gain entrance in or curry favor with SNM. *Id.* at 2. The jury found Cordova guilty also "of causing the death of . . . Dix through use or possession of a firearm, as charged in Count 3 of the Indictment." *Id.*

Cordova moved for a new trial on the grounds of insufficient and improperly admitted evidence. [Doc. 903]. The Court denied the motion. [Doc. 1051]. Cordova then later filed for a new trial based on newly discovered evidence, which the Court also denied. [Docs. 1108, 1204]. Cordova appealed to the Tenth Circuit on the same grounds, and the Tenth Circuit affirmed his

3

conviction. *United States v. Cordova*, 25 F.4th 817 (10th Cir. 2022). Cordova did not seek certiorari from the United States Supreme Court.

Cordova now collaterally attacks his convictions. In an original petition, he raised only ineffective assistance of counsel, but his amended petition added a challenge to his § 924(c), (j)(1) conviction based on the Supreme Court's post-trial decision in *Borden v. United States*, 593 U.S. 420 (2021).

## II.  BRIEFING SUMMARY

Cordova claims that he suffered ineffective assistance of trial and appellate counsel by their failure to challenge impermissible constructive amendments to his charges at trial. [22-cv-00479 Doc. 1]. Specifically, Cordova asserts his charges were constructively amended because: (1) the charges alleged Cordova and Garcia murdered Dix but the evidence showed Garcia paid Cordova and Montoya to do it; (2) the charges alleged Garcia hired Cordova to murder Dix but the evidence showed Garcia originally hired Montoya; and (3) the charges alleged Cordova and Montoya received heroin and cash for the murder but the evidence showed Montoya agreed to the murder because of his drug debt to Garcia. *Id.* at 4. Cordova also separately argues that his § 924(c), (j)(1) conviction improperly relied on a predicate offense that does not require that he purposefully or knowingly used force against another person or property. [22-cv-00479 Doc. 7].

The United States counters that Cordova's claim of ineffective assistance of counsel fails as the record demonstrates the baselessness of his constructive amendment arguments. [22-cv-00479 Doc. 9, at 6–7]. Regarding the firearm charge, Respondent argues that Cordova was found guilty of murdering Dix in exchange for pecuniary value and therefore the racketeering conviction constituted a violent crime for purposes of § 924(c). *Id.* at 10–11.

4

### III. STATEMENT OF THE ISSUES

1. Were Cordova's trial and appellate counsel ineffective for failing to argue the prosecution constructively amended his charges during trial?

2. Does *Borden* invalidate Cordova's 18 U.S.C. § 924(c), (j)(1) conviction because his predicate racketeering charge does not qualify as a "crime of violence"?

### IV. APPLICABLE LAW

A.  **Standard of Review for § 2255 Petitions.**

Under 28 U.S.C. § 2255(a), federal prisoners may demonstrate that they have a right to release because their conviction violated the U.S. Constitution or federal statute, the trial court lacked jurisdiction, their sentence exceeded the legal maximum, or their conviction is "otherwise subject to collateral attack." As a collateral proceeding, § 2255 does not allow a petitioner to re-argue claims the petitioner already raised on direct appeal or bring claims that were available at the time of direct appeal. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). Valid grounds for a § 2255 petition can include, as Cordova asserts here, ineffective assistance of counsel or that a new interpretation of a criminal statute applies retroactively and invalidates the conviction. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Jones v. Hendrix*, 599 U.S. 465, 476–77 (2023). A court should hold an evidentiary hearing on a § 2255 petition unless the court can conclusively discern from the record the petition does not warrant one. 28 U.S.C. § 2255(b); *Runge v. United States*, 427 F.2d 122, 127 (10th Cir. 1970); *United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012). A court should also construe § 2255 petitions liberally when filed pro se. *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 (10th Cir. 2013), *cert. denied*, 571 U.S. 1070 (2013).

B.  **Ineffective Assistance of Counsel.**

A two-part inquiry governs ineffective assistance of counsel claims. *United States v. Spaeth*, 69 F.4th 1190, 1211 (10th Cir. 2023) (discussing *Strickland v. Washington*, 466 U.S. 668

5

(1984)). First, a petitioner must demonstrate that his counsel's performance fell below an "objective standard of reasonableness" so that he was effectively deprived of a fair trial. *Strickland*, 466 U.S. at 687. On this part, courts must give counsel's decisions great deference, avoiding the use of hindsight and assuming they used "sound trial strategy." *Id.* at 689. If a petitioner can show deficient performance, he then must demonstrate a reasonable probability that the outcome of the trial would have been different but for his counsel's deficiency. *Id.* at 694. Generally, courts judge the effect of counsel's performance by the unaffected evidence in the record supporting the result reached. *See Frost v. Pryor*, 749 F.3d 1212, 1227 (10th Cir. 2014); *see also Bledsoe v. Bruce*, 569 F.3d 1223, 1238 (10th Cir. 2009).

The same test, tailored to an appeals context, applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must demonstrate that counsel failed to raise a nonfrivolous issue plus a reasonable probability that he would have prevailed on appeal but for that failure. *Smith*, 528 U.S. at 285. Simply identifying an unraised argument does not prove ineffective counsel since successful appellate advocacy calls for "winnowing out weaker arguments . . . and focusing . . . at most on a few key issues." *See Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). Courts may address *Strickland*'s two parts in any order, and failure on one defeats the whole claim. *United States v. Maley*, 1 F.4th 816, 820 (10th Cir. 2021).

C.     **Violation of Due Process by Constructive Amendments.**

Under the Fifth Amendment, due process guarantees that the prosecution may only try a defendant on charges set out in the indictment. *United States v. Koerber*, 10 F.4th 1083, 1115 (10th Cir. 2021). Courts recognize two forms of alterations to an indictment that may occur without a literal change to its text: a "simple variance" and a "constructive amendment." *Hunter v. New Mexico*, 916 F.2d 595, 598–99 (10th Cir. 1990). A simple variance occurs when the elements of the charge stay the same but the evidence at trial supports facts that materially differ from those

alleged in the indictment. *Koerber*, 10 F.4th at 1115. Generally, a simple variance will not warrant reversing a conviction so long as the trial evidence corresponds to a clearly charged offense. *Hunter*, 916 F.2d at 598–99. A constructive amendment occurs when the evidence and jury instructions so alter the terms of an indictment that it changes an essential element of the offense. *United States v. Rosalez*, 711 F.3d 1194, 1210 (10th Cir. 2013). A constructive amendment violates due process by creating a substantial likelihood that the jury convicted the defendant for an uncharged crime. *Id.* However, an indictment need not specify the theory of liability that a charge will rely on, such as direct liability or accessory liability. *Id.*

**D.      Retroactivity and *Borden*.**

When the Supreme Court issues a new rule interpreting a criminal statute, the rule automatically applies to all criminal cases pending review. *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). But for collateral proceedings, the rule only applies retroactively if it caused a "substantive" change to the law, meaning it narrowed the class of people or conduct to which the statute applied. *Schriro v. Summerlin*, 542 U.S. 348, 351–52 (2004). By contrast, a procedural rule that only changes the manner in which guilt is determined does not. *Id.* at 352.

In *Borden*, the Supreme Court held that 18 U.S.C. § 924(e)'s sentence enhancement triggered by a "violent felony" only applies to predicate crimes that require the defendant to have purposefully or knowingly committed the criminal act(s). 593 U.S. at 438–39. To act purposefully the defendant must have "consciously desired" the act's result, whereas to act knowingly requires the defendant to have understood his acts were "practically certain" to cause a result. *Id.* at 426 (plurality opinion). The Court reasoned that the statute's definition of a violent felony, one that "has as an element the use, attempted use, or threatened use of physical force against the person of another," necessarily implies the defendant consciously directed said force. *Id.* at 428–30.

The Supreme Court additionally held that the inquiry demands the "categorical approach," meaning the definition of a "violent felony" depends on the elements of the charge, not the facts presented at trial. *Id.* at 424. A year after *Borden*, the Supreme Court turned to 18 U.S.C. § 924(c) and held that an attempted robbery under the Hobbs Act did not satisfy the provision's definition of a "crime of violence." *United States v. Taylor*, 596 U.S. 845, 851 (2022). *Taylor* reiterated the categorical approach but did not explicitly hold that § 924(c) excludes predicate crimes that a defendant can commit recklessly. *See Id.*

However, the Tenth Circuit did apply *Borden* directly to 18 U.S.C. § 924(c),[3] holding that a crime of violence does not include crimes that a defendant can commit without purposeful or knowing direction of physical force against a person or property. *United States v. Kepler*, 74 F.4th 1292, 1303 (10th Cir. 2023); *accord United States v. Devereaux*, 91 F.4th 1361, 1370 (citing *Jones v. United States*, 36 F.4th 974, 986 (9th Cir. 2022)). The Tenth Circuit had also found that *Borden* applied retroactively for § 2255 petitions and reversed a conviction under VICAR on those grounds. *United States v. Toki*, 23 F.4th 1277, 1281 (10th Cir. 2022). The Supreme Court later vacated the judgment and remanded but did so in light of *Taylor* after *Toki* affirmed the use of Hobbs Act robbery charges as predicates. *Kamahele v. United States*, 143 S. Ct. 556, 556 (2023). *Borden*'s retroactive application also was implicitly accepted in a related Supreme Court order to vacate and in unpublished Tenth Circuit opinions. *See Kamahele v. United States*, 142 S. Ct. 58, 58 (2021); *United States v. Lozado*, No. 20-1420, 2021 WL 4901656, at *3 (10th Cir. Oct. 21, 2021); *United States v. Elliot*, No. 21-8016, 2021 WL 6110395, at *1 (10th Cir. Dec. 23, 2021).

---

[3] I note here that my analysis focuses on § 924(c) because Petitioner's 18 U.S.C. § 924 conviction hinges on its language. 18 U.S.C. § 924(j)(1) ("A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm . . . .").

The categorical approach to determining whether a conviction qualifies as a crime of violence sometimes permits use of a "modified" categorical approach. *Descamps v. United States*, 570 U.S. 254, 257 (2013) (analyzing 18 U.S.C. § 924(e)). The modified categorical approach applies to "divisible" statutes that use alternative slates of elements to define the same crime. *United States v. Trent*, 884 F.3d 985, 988–89 (10th Cir. 2018). In such instances, a court may narrow its analysis to the specific elements on which the jury convicted the defendant. *Devereaux*, 91 F.4th at 1366. However, there is a difference between divisible elements and divisible facts that can prove the same element. *Mathis v. United States*, 579 U.S. 500, 506 (2016). For example, an offense that requires the defendant must use a "dangerous weapon" such as a knife, gun, or bat still has only one element because a jury could unanimously convict the defendant without agreeing on what kind of dangerous weapon he used. *Id.* Distinguishing elements from facts looks to three primary factors laid out by *Mathis*: (1) whether court decisions specify which elements require unanimous jury agreement; (2) whether the statute ties different elements to different punishments; and (3) whether the record demonstrates the specific elements on which the jury received instruction. *Devereaux*, 91 F.4th at 1366 (quoting *United States v. Winrow*, 49 F.4th 1372, 1376–77 (10th Cir. 2022)).

## V. ANALYSIS

I recommend that Cordova's claim for ineffective assistance of counsel is conclusively refuted by the record and should be denied. I also recommend that the Court vacate Cordova's § 924 conviction under *Borden* because his predicate racketeering charge incorporated a definition of reckless homicide with one of its elements.

**A.    Cordova Does Not Have a Claim for Ineffective Assistance of Counsel.**

Cordova alleges he had ineffective trial and appellate counsel because neither argued that he suffered a constructive amendment of his indictment at trial. However, effective counsel does

9

not need to attempt meritless arguments. *United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Cordova's examples of constructive amendments—charging Garcia with murder even though he paid others to do it, charging Cordova with an agreement to murder even though Garcia first hired Montoya, and charging Cordova with receiving something of pecuniary value for the murder even though Montoya acted to settle his debt—do not concern Cordova's charges, neglect additional evidence the prosecution presented, and overlook how different theories of liability can prove the same crime. [Doc. 1051, at 24] (Garcia hires Cordova to partner with Montoya); *Id.* at 27 (Garcia paid both Cordova and Montoya for the murder); *State v. Vigil*, 2010-NMSC-003, ¶ 15, 226 P.3d 636, 639 (accessories can be charged with the crime of the principal). In sum, the prosecution neither changed the factual allegations of the indictments nor altered its charges by the presentation of evidence and jury instructions. *Rosalez*, 711 F.3d at 1210. The record therefore shows that the Court can deny Cordova's ineffective assistance claim without further proceedings.

**B.      The *Borden* Decision Applies Retroactively, and Cordova's § 924(c), (j)(1) Conviction Violates It.**

As discussed in Part IV.D, *supra*, the Tenth Circuit does not appear to have direct, standing precedent recognizing *Borden*'s retroactive application to § 2255 petitions challenging § 924(c) convictions. Nevertheless, prior non-precedential holdings appear to accept that conclusion. *Toki*, 23 F.4th at 1281; *Lozado*, 2021 WL 4901656, at *3; *Elliot*, 2021 WL 6110395, at *1. The Supreme Court has also held that its decision on a similar provision of 18 U.S.C. § 924 retroactively applied to collateral proceedings. *Welch v. United States*, 578 U.S. 120, 129 (2016). *Borden* fits the substantive category of changes to criminal law by narrowing the class of conduct that may qualify as a violent crime, and the United States does not dispute the decision's retroactivity. I therefore

recommend that the Court find that Cordova's § 924(c), (j)(1) conviction, using his racketeering charge as a predicate offense, must satisfy *Borden*.

VICAR criminalizes murdering, kidnapping, maiming, assaulting, or threatening to commit a crime of violence in exchange for pecuniary value from or advancement with a racketeering enterprise. 18 U.S.C. § 1959(a). As the Tenth Circuit's analysis shows in *Toki*, if the racketeering charge rests on an offense that the defendant can commit recklessly, it may not qualify as a violent crime under § 924(c). 23 F.4th at 1281.

The prosecution charged Cordova with violating VICAR by murdering Dix for Garcia, referencing New Mexico's murder statute NMSA 1978, § 30-2-1. [Doc. 372, at 53]. The statute includes three definitions of first-degree murder including "willful, deliberate and premeditated killing," or "in the commission of or attempt to commit any felony," and "by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life." NMSA 1978, § 30-2-1(A). Second degree murder is a killing "without lawful justification or excuse" by a person who ""knows that [his] acts create a *strong probability* of death or great bodily harm to that individual or another." NMSA 1978, § 30-2-1(B) (emphasis added). New Mexico's uniform jury instructions label second degree murder as a "reckless killing." NMRA UJI Crim. 14-210. New Mexico further characterizes second-degree murder as a lesser crime than depraved mind murder, which the Tenth Circuit found falls in between intentional and reckless killing. *State v. Brown*, 1996-NMSC-073, ¶ 16, 931 P.2d 69, 73; *Kepler*, 74 F.4th at 1304.[4]

Cordova's jury received an instruction defining murder consistent with New Mexico law directing it to consider first degree (intentional) murder and, if unable to agree upon guilt, then to consider second degree (reckless) killing as a manner by which Cordova committed the murder

---

[4] The Tenth Circuit considered "depraved heart" murder, which is terminology that New Mexico treats interchangeably with "depraved mind." *See, e.g., State v. Dowling*, 2011-NMSC-016, ¶ 22, 257 P.3d 930, 937–38.

11

element of the racketeering charge. [Doc. 880, at 34–35]. Therefore, the statute and record show that the prosecution charged Cordova with a VICAR offense incorporating an element of physical force Cordova could commit recklessly, meaning the offense did not qualify as a crime of violence under 18 U.S.C. § 924(c) and 18 U.S.C. § 924(j)(1). *Cf. Borden*, 593 U.S. at 426.

An example borrowed from Justice Kavanaugh's dissent in *Borden* may help demonstrate why I believe the Court should vacate Cordova's § 924(c), (j)(1) conviction. One could imagine a hypothetical scenario where Garcia instead hires Cordova to fire shots near Dix's home to scare him, but one of Cordova's bullets strays through a window and kills Dix. *See Id.* at 451 (Kavanaugh, J., dissenting). In that scenario, Cordova could receive the same charges as he did here without intending or knowing his acts would cause Dix's death. *See Id.* Thus, the elements of Cordova's racketeering charge given to the jury pre-*Borden* undermines his § 924(c), (j)(1) conviction post-*Borden* even though the prosecution proceeded on a factual theory of a gang-related assassination.

To be sure, other parts of the record support that Cordova purposefully committed a VICAR crime. His charge, as read to the jury, alleges that he "did unlawfully, knowingly, and intentionally" murder Dix. [Doc. 880, at 22]. The jury further received instruction that to convict Cordova of the racketeering charge, he had to have murdered Dix either for pecuniary value or for advancement with a racketeering enterprise. *Id.* at 27. Other provisions similarly instruct the jury on intentional murder. *Id.* at 34, 41. And finally, the United States cites *United States v. Martinez*, in which the Court found New Mexico's second-degree murder definition analogous to generic murder. 545 F. Supp. 3d. 1079, 1084 (D.N.M. 2021).

However, these facts do not make Cordova's § 924(c), (j)(1) conviction valid. *Borden* applies the categorical approach strictly: if there is any manner in which Cordova could have been

12

convicted of the same charges by using physical force recklessly, he has not committed a crime of violence. *Borden*, 593 U.S. at 441 ("An offense does not qualify as a 'violent felony' unless the *least* serious conduct it covers falls within the elements clause.") (emphasis in original). NMSA 1978, § 30-2-1 includes reckless homicide in its coverage. Even if the Court proceeded to applying the modified categorical approach and found NMSA 1978, § 30-2-1 divisible,[5] the verdict form did not distinguish what definition(s) of murder the jury agreed the prosecution proved when they found Cordova violated VICAR. [Doc. 890, at 1]. And while VICAR requires that the defendant purposefully commit a predicate offense in exchange for something, that does not necessarily mean the defendant's offense included him knowing or intending that he would cause someone physical harm. *See Toki*, 23 F.4th at 1281.

Furthermore, the Court's *Martinez* decision addressed a different question than the one posed by *Borden*. The Court issued *Martinez* prior to *Bolden* and focused its analysis on VICAR. When Martinez pointed out that New Mexico includes depraved mind murder with first-degree, not second-degree murder, the Court found that:

> even if Martinez is correct that New Mexico's first-degree murder definition meets the depraved heart definition, Martinez misapprehends the inquiry; the inquiry is only whether New Mexico second-degree murder corresponds with murder's generic definition. In other words, an instruction on New Mexico second-degree murder would be inappropriate only if it is *narrower* than murder's generic definition.

*Martinez*, 545 F. Supp. 3d at 1086 (emphasis added). The Court therefore held that New Mexico's second-degree murder was broad enough to satisfy the definition of generic murder

---

[5] I would recommend, if the Court deems it necessary for its analysis, that the Court find the statute is divisible. NMSA 1978, § 30-2-1 distinguishes second-degree murder as a second-degree felony, and New Mexico's uniform jury instructions use different elements for all the statute's definitions of murder. *See Devereaux*, 91 F.4th at 1366; NMRA UJI Crim. 14-201 (intentional murder); NMRA UJI Crim. 14-202 (felony murder); NMRA UJI Crim. 14-203 (depraved mind murder); NMRA UJI Crim. 14-210 (second-degree murder).

under VICAR but did not determine if it is narrow enough to exclude reckless killings under § 924(c).

*Martinez* relied in part on New Mexico decisions holding that second-degree murder included intentional killings performed without deliberation or premeditation. *State v. Garcia*, 1992-NMSC-048, ¶ 21, 837 P.2d 862, 866; *State v. Adonis*, 2008-NMSC-059, ¶ 16, 194 P.3d 717, 721; *State v. Martinez*, 2021-NMSC-012, ¶ 51, 483 P.3d 590, 604 ("rash impulse" killings are categorized under second-degree murder). However, other New Mexico decisions have held that second-degree murder's definition also includes reckless homicides committed without the evil intent or heightened risks of depraved mind murders. *Brown*, 1996-NMSC-073, ¶ 16, 931 P.2d at 73; *State v. Carrasco*, 2007-NMCA-152, ¶¶ 6–7, 172 P.3d 611, 613 ("[Second-degree murder] can be committed intentionally or unintentionally . . . *reckless killing satisfies the statutory requirements*.") (emphasis added); *State v. Suazo*, 2017-NMSC-011, ¶¶ 19–22, 390 P.3d 674, 681–82; *see also State v. Baca*, 1997-NMSC-059, ¶ 32, 950 P.2d 776, 783. Because New Mexico second-degree murder includes reckless homicide, the jury in this case received that broad definition, and jurors may have used that definition when they found Cordova guilty, the racketeering charge did not meet § 924(c)'s definition of a crime of violence. *Borden*, 593 U.S. at 441.

## VI. <u>CONCLUSION</u>

In summary, I recommend that the Court find the record conclusively demonstrates Cordova's claim for ineffective assistance of counsel has no merit and should be denied. However, I recommend that the Court find *Borden* applies retroactively and invalidates Cordova's § 924(c), (j)(1) conviction because it relied on a predicate offense that could have been committed recklessly.

Consequently, I recommend that the Court affirm Cordova's 18 U.S.C. § 1959(a)(1), (2) conviction and vacate Cordova's 18 U.S.C. § 924(c), (j)(1) conviction.

                                              Hon. Jerry H. Ritter
                                              United States Magistrate Judge

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of the Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of these proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**