IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANTHONY CORDOVA,

     Petitioner,

vs.

                                      No. CIV 22-00479-JB/JHR
                                      Re: No. CR 16-01613-JB/JHR-11

UNITED STATES OF AMERICA,

     Respondent.

**<u>MEMORANDUM OPINION AND ORDER PARTIALLY ADOPTING THE
MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION</u>**

**THIS MATTER** comes before the Court on the Plaintiff's Motion Under 28 U.S.C. § 2255

to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed June 29, 2022

(Doc. 1)("Habeas Motion").   In the Habeas Motion, Plaintiff Anthony Cordova challenges his

convictions under 18 U.S.C. §§ 1959 and 924(c), (j)(1).   <u>See</u> Habeas Motion at 1.   The Court

referred the Habeas Motion to The Honorable Jerry H. Ritter, United States Magistrate Judge for

the United States District Court for the District of New Mexico, to submit proposed findings and

a recommended disposition.   <u>See</u> Order Referring Case at 1, filed August 25, 2022 (Doc. 3).

Magistrate Judge Ritter recommends that the Court affirm Cordova's § 1959 conviction and vacate

his §§ 924(c), (j)(1) conviction.   <u>See</u> Proposed Findings and Recommended Disposition at 1, filed

October 17, 2024 (Doc. 24)("PFRD").   The primary issues are: (i) whether the Court should adopt

Magistrate Judge Ritter's PFRD; (ii) whether Defendant the United States constructively amended

the indictment at trial such that the Court should vacate Cordova's § 1959 VICAR Murder

conviction; and (iii) whether New Mexico second-degree murder can be committed recklessly,

which would invalidate Cordova's §§ 924(c), (j)(1) Firearm-Murder Enhancement under <u>Borden</u>

<u>v. United States</u>, 593 U.S. 420 (2021).   The Court partially adopts Magistrate Judge Ritter's PFRD

to affirm Cordova's § 1959 conviction but departs from the PFRD and affirms the §§ 924(c), (j)(1) conviction. The Court concludes that: (i) the United States does not constructively amend Cordova's indictment at trial, and, thus, the Court upholds his § 1959 conviction; and (ii) New Mexico second-degree murder requires a mens rea of knowledge, not recklessness, and, thus, is a sufficient predicate crime of violence for the §§ 924(c), (j)(1) conviction. The Court, therefore, denies Cordova's Habeas Motion.

## **FACTUAL BACKGROUND**

The Court first describes Cordova's charges in the indictments. Then, the Court summarizes the trial events and jury instructions that are relevant to Cordova's Habeas Motion. Finally, the Court summarizes the jury verdict.

1.    **The Indictment and Superseding Indictment.**

In 2016, a grand jury indicts Cordova and eleven others with four total counts of different racketeering crimes in connection with the Syndicato de Nuevo Mexico Gang ("SNM"). See United States v. Baca, No. CR16-01613 JB/JHR, Indictment at 1, filed April 21, 2016 (Doc. 2)("Original Indictment"). Specifically as to Cordova, the grand jury indicts Cordova on the charge of Count 2, Violent Crimes in Aid of Racketeering (Murder), 18 U.S.C. § 1959(a)(1)("VICAR Murder"), in connection with the murder of Shane Dix on behalf of an SNM member. See Original Indictment at 50. The Original Indictment states:

> On or about February 4, 2005, in Bernalillo County, in the District of New Mexico, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from the Syndicato de Nuevo Mexico Gang (SNM), and for the purpose of gaining entrance to and maintaining and increasing position in the Syndicato de Nuevo Mexico Gang (SNM), an enterprise engaged in racketeering activity, the defendants, **CHRISTOPHER GARCIA** and **ANTHONY**

**CORDOVA**, a.k.a. "Antone," did unlawfully, knowingly, and intentionally murder S.D., in violation of NMSA 1978, Sections 30-2-1 and 30-1-13.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

Original Indictment at 50.

In a 2017 superseding indictment, a grand jury indicts Cordova on the additional charge of Count 3, Causing Death Through Use or Possession of a Firearm, 18 U.S.C. §§ 924(c) and 924(j)(1)("Firearm-Murder Enhancement"), also in connection with Dix's murder.  See United States v. Baca, No. CR16-01613 JB/JHR, Superseding Indictment at 53, filed March 9, 2017 (Doc. 372)("Indictment").  The additional charge states:

> On or about February 4, 2005, in Bernalillo County, in the District of New Mexico, defendant **ANTHONY CORDOVA**, a.k.a. "Antone," did knowingly use and carry a firearm during and in relation to a crime of violence for which he may be prosecuted in a Court in the United States, as set forth in Count 2 of this Superseding Indictment, and in the course of said offense causes the death of S.D. through the use of the firearm, which killing is a murder as defined in 18 U.S.C. § 1111(a).
>
> In violation of 18 U.S.C. §§ 924(c) and 924(j)(1).

Indictment at 53-54.

## 2.    **The Trial**.

At trial, the United States presents evidence that SNM member Christopher Garcia wanted Dix dead because Dix shot him in a previous encounter.  See Memorandum Opinion and Order at 24, filed June 27, 2019 (Doc. 1051)("New Trial MOO").  Mario Montoya testifies that Montoya owed Garcia "considerable money" for drugs, and that Garcia asked Montoya to "take care" of Dix, i.e., shoot Dix for Garcia.  See New Trial MOO at 23-24.[1]  After Montoya does not perform

---

[1]Montoya's testimony is not the only evidence, but it is the focus of the Court's summary here given it is the focus of Cordova's challenge.

the hit on his own, Garcia recruited Cordova to assist.  See New Trial MOO at 24.  To prepare an alibi, Garcia instructs the two to commit the murder while Garcia is in Las Vegas, Nevada, attending a Super Bowl party.  See New Trial MOO at 24.  Montoya testifies that he and Cordova found and approached Dix at a gas station under the pretense of a drug buy.  See New Trial MOO at 25.  When Dix left to retrieve a package from his supply, Cordova told Montoya that he knew where Dix would go and insisted that they follow.  See New Trial MOO at 25.  Cordova and Montoya drove after Dix, caught up to him, and stopped near his vehicle.  Cordova shot Dix multiple times from their car before telling Montoya to drive on.  See New Trial MOO at 26-27.  The two threw their guns into the Rio Grande, and later met with Garcia, who paid Cordova and Montoya with heroin and cash.  See New Trial MOO at 27.

### 3.    The Jury Instruction on VICAR Murder.

Before jury deliberations, the Court reads the jury instructions, which explain the elements of Cordova's charges.  See United States v. Baca, No. CR16-01613 JB/JHR, Court's Final Jury Instructions at 1-55, filed July 23, 2018 (Doc. 880)("Jury Instructions").  Jury Instructions 20 to 35 instruct the jury on VICAR Murder and the Firearm-Murder Enhancement.  See Jury Instructions at 23 to 47.  Jury Instruction 23 explains that, for the VICAR Murder charge, the United States must prove five elements beyond a reasonable doubt, the fourth and most relevant being that Cordova "committed murder, which violated State laws, on or about February 4, 2005."  Jury Instructions at 27.[2]  To aid the jury's deliberation as to the fourth element, Jury Instruction 27

---

[2]The other four elements the United States must prove beyond a reasonable doubt are the existence of an enterprise, the enterprise engaged in or its activities affected interstate commerce, the enterprise engaged in racketeering activity, and that Cordova's purpose in committing the murder was either: (1) as consideration for a promise or agreement to pay anything of pecuniary value from the charged enterprise, or (2) to gain or to maintain or increase position in the charged

provides the "essential elements" of both first and second-degree murder under New Mexico law that the United States must prove beyond a reasonable doubt. Jury Instructions at 34. The jury instructions state that New Mexico first and second-degree murder share two of three elements: that Cordova killed Dix, and the killing "happened in New Mexico on or about February 4, 2005." See Jury Instructions at 34. But most importantly, the jury instructions explain that first and second-degree murder have a different third element. See Jury Instructions at 34. For first-degree murder, the United States must prove beyond a reasonable doubt that the "killing was with the deliberate intention to take away the life of Mr. Dix," whereas for second-degree murder, the United States must prove beyond a reasonable doubt that "Mr. Cordova knew that his acts created a strong probability of death or great bodily harm to Mr. Dix." Jury Instructions at 34. The jury instructions also instruct the jury to first discuss first-degree murder, and, if they cannot unanimously agree that Cordova is guilty, then to move on to second-degree murder. See Jury Instructions at 36. The jury verdict as to the VICAR Murder charge must be unanimous. See Jury Instructions at 36-38.

### 4. **The Jury Instruction on the Firearm-Murder Enhancement.**

Next, the jury instructions explain that, to find Cordova guilty of the Firearm-Murder Enhancement, the United States must prove five elements beyond a reasonable doubt. The first and most relevant is that "Mr. Cordova is guilty of the offense charged in Count 2," i.e., the VICAR Murder charge. Jury Instructions at 39. The United States must also prove that Cordova uses or carries a firearm, Cordova does so during and in relation to the Dix murder, Cordova causes Dix's

_____

enterprise. See Jury Instructions at 26. Cordova's Habeas Motion does not dispute these other four elements, so the Court does not discuss them in any more detail.

death by using the firearm, and the offense occurred around February 4, 2005. See Jury Instructions at 39.

**5.    The Jury Verdict.**

In a two-page verdict form, the jury finds Cordova guilty of both counts of VICAR Murder and the Firearm-Murder Enhancement. See United States v. Baca, No. CR16-01613 JB/JHR, Verdict at 1, filed July 24, 2018 (Doc. 890). First, the jury finds Cordova guilty of "violent crimes in aid of racketeering in the murder of Shane Dix, as charged in Count 2 of the Indictment," i.e., VICAR Murder. See Verdict at 1. The verdict form, however, does not specify what murder -- first or second-degree -- Cordova commits. See Verdict at 1. The jury also finds specifically that the United States shows beyond a reasonable doubt that Cordova's "general purpose in committing murder was as consideration for a promise or agreement to pay anything of pecuniary value from the charged enterprise." See Verdict at 1. For the Firearm-Murder Enhancement, the jury finds Cordova guilty of "causing the death of Shane Dix through the use or possession of a firearm, as charged in Count 3 of the Indictment." See Verdict at 2.

## PROCEDURAL BACKGROUND

The Court first describes the post-trial motions leading up to the Habeas Motions, including the motions for new trial. The Court then describes the Habeas Motions, the PFRD, and the parties' objections to the PFRD. Finally, the Court summarizes the arguments in the parties' objections to the PFRD.

**1.    The Motions for New Trial.**

Cordova moved for a new trial, arguing that the Court improperly admits evidence and that there is insufficient evidence of guilt. See United States v. Baca, No. CR16-01613 JB/JHR,

- 6 -

Defendant Anthony Cordova's Motion for New Trial at 1, filed August 21, 2018 (Doc. 903). The Court denied the motion. See United States v. Baca, No. CR16-01613 JB/JHR, Memorandum Opinion and Order at 151, filed June 27, 2019 (Doc. 1051). The Court subsequently denied Cordova's ex parte motion for a new trial based upon newly disclosed statements from Garcia. See United States v. Baca, No. CR16-01613 JB/JHR, Memorandum Opinion and Order at 2, filed March 20, 2020 (Doc. 1205). Cordova appealed on the same grounds to the United States Court of Appeals for the Tenth Circuit, but the Tenth Circuit affirms his convictions. See United States v. Cordova, 25 F.4th 817, 817 (10th Cir. 2022).

## 2. **The Habeas Motions and Briefing.**

After exhausting his direct appeals, Cordova files his Habeas Motion and requests the Court vacate his VICAR Murder conviction on grounds of ineffective assistance of counsel. See Habeas Motion at 1. Cordova then amends the Habeas Motion to challenge additionally his Firearm-Murder Enhancement conviction based on the Supreme Court of the United States' decision in Borden v. United States, 593 U.S. 420, 432 (2021), which the Supreme Court issues during his direct appeal. See Amended and Supplement under, 28 U.S.C. § 2255 at 6, filed March 27, 2023 (Doc. 7)("Amended Habeas Motion"). The Court collectively refers to the Habeas Motion and the Amended Habeas Motion as the "Habeas Motions." The United States filed a response. See United States' Response to Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed May 2, 2023 (Doc. 9)("Habeas Response"). Cordova files a joint reply and second amended motion. See Amended Motion to Vacate the Judgment Conviction and Sentence/Amended Motion Reply (dated June 6, 2023), filed July 17, 2023 (Doc. 14)("Second Amended Habeas Motion"). The Court grants the United States' motion to strike the

Second Amended Habeas Motion.  See Memorandum Opinion and Order Adopting Proposed Findings and Recommended Disposition at 1, filed August 29, 2024 (Doc. 23).

In the Habeas Motion, Cordova argues that he suffered ineffective assistance of counsel, because his trial and appellate counsel never challenged constructive amendment of the indictment during trial as a violation of his due process rights.  See Habeas Motion at 4.  Cordova asserts that the VICAR Murder charge is constructively amended at trial on evidence that Garcia does not participate in the murder himself, Garcia hired Montoya first, Montoya agreed to the murder because of a drug debt, and Montoya helped commit the murder.  See Habeas Motion at 4.  Cordova argues, moreover, that Borden v. United States invalidates his Firearm-Murder Enhancement conviction because the Supreme Court holds that the conviction's predicate "crime of violence" cannot include a crime that can be committed recklessly.  See Borden v. United States, 593 U.S. at 432.

The United States responds that Cordova does not suffer ineffective assistance of counsel. See Response at 6.  The United States contends that no constructive amendment occurred, given that the evidence to which Cordova points does not contradict or broaden the indictment's VICAR Murder elements.  See Response at 6-7.  Regarding the Firearm-Murder Enhancement, the United States argues that the predicate crime of VICAR Murder satisfies Borden v. United States, because an offender must act knowingly or intentionally for personal gain, and New Mexico's first and second-degree murder definitions both require a mens rea that is more culpable than recklessness. See Response at 10-11.

3.      **Magistrate Judge Ritter's PFRD**.

The Court referred the Habeas Motions to Magistrate Judge Ritter, to submit proposed findings and a recommended disposition.  See Order Referring Case at 1.  Magistrate Judge Ritter recommends that the Court affirm Cordova's VICAR Murder conviction and vacate his Firearm-Murder Enhancement conviction.  See PFRD at 1.  Magistrate Judge Ritter first addresses the requirements for a valid action under 28 U.S.C. § 2255.  While habeas motions may not raise issues the petitioner raised or could have raised on direct appeal, Magistrate Judge Ritter concludes Cordova clears that hurdle.  See PFRD at 5.  Magistrate Judge Ritter notes that ineffective assistance of counsel is a well-established ground for a Habeas Motion and that Borden v. United States retroactively applies to Cordova's Firearm-Murder Enhancement conviction by narrowing the statute's definition of a "crime of violence."  PFRD at 5, 10-11.

Magistrate Judge Ritter recommends that the Court find an absence of constructive amendment and that Cordova's counsel is not deficient.  See PFRD at 9-10.  The examples of "amendments" that Cordova offers revolve around Garcia and Montoya's conduct and do not change the allegations or charges against Cordova.  See PFRD at 9-10.  However, Magistrate Judge Ritter recommends that the Court find Cordova's VICAR Murder conviction is not a crime of violence under Borden v. United States.  See PFRD at 14.  Magistrate Judge Ritter focuses on the Indictment and the jury instruction's stated mens rea requirement for second-degree murder under New Mexico law: that the defendant knew his actions have a strong probability of causing death or great bodily injury.  See PFRD at 11.  Magistrate Judge Ritter highlights how both New Mexico's Uniform Jury Instructions ("UJI") and New Mexico caselaw hold that second-degree murder includes reckless killings.  See PFRD at 12-13.  Magistrate Judge Ritter concludes that the

mens rea does not require Cordova to intentionally or knowingly target Dix with physical force, a necessary characteristic of a crime of violence under Borden v. United States.  See PFRD at 12-13.  According to Magistrate Judge Ritter, VICAR Murder, as the jury instructions describe it, cannot be a predicate crime of violence supporting a Firearm-Murder Enhancement conviction. See PFRD at 12-13.

In his analysis, Magistrate Judge Ritter distinguishes this Court's prior decision which concludes that New Mexico second-degree murder corresponds with the federal "generic" definition of murder.  PFRD at 13-14.  Magistrate Judge Ritter reasons that decision, United States v. Martinez, 545 F. Supp. 3d. 1079, 1081 (D.N.M. 2021)(Browning, J.), came before Borden v. United States and does not focus on the least culpable conduct subsumed within New Mexico second-degree murder.  See PFRD at 13-14.

## 4.    **The Parties' Objections to the PFRD.**

Both parties filed objections.  See United States' Objections to Proposed Findings and Recommended Disposition, filed November 14, 2024 (Doc. 29)("US Objections"); Motion to Reply to Proposed Findings and Recommended Disposition Under 2255, filed November 21, 2024 (Doc. 30)("Cordova Objections").  Cordova objects to Magistrate Judge Ritter's recommendation for his ineffective assistance of counsel claim, reasserting that evidence that Garcia originally hired Montoya for the Dix murder and Montoya participated in the crime fundamentally altered Cordova's charges.  See Cordova Objections at 1.  He adds that the Court does not instruct the jury on the "murder-for-hire" and the instructions do not distinguish between an "associate" and "accomplice."  Cordova Objections at 2.  Cordova also raises distinct grounds for his trial counsel's

ineffectiveness, including failure to challenge insufficient evidence of guilt, interview key witnesses, or object to improper evidence and witness examinations. Cordova Objections at 1-4.

The United States objects to Magistrate Judge Ritter's recommendation to vacate the Firearm-Murder Enhancement conviction based on the intervening <u>Borden v. United States</u> decision for three reasons. <u>See</u> US Objections at 5-21. First, the United States maintains that Cordova waives his <u>Borden v. United States</u> challenge, because he could have made the argument to the Tenth Circuit during the briefing period of his direct appeal. <u>See</u> US Objections at 5-6. Second, the United States argues that New Mexico second-degree murder equates to federal depraved-heart murder, which satisfies <u>Borden v. United States</u> under Tenth Circuit precedent. <u>See</u> US Objections at 8-13. Third, the United States argues that any error in using New Mexico's definition of second-degree murder is harmless, because VICAR Murder's inclusion of federal generic murder satisfies <u>Borden v. United States</u>. <u>See</u> US Objections at 18-21. Noting that, although the jury does not receive a generic federal-murder instruction, the United States asserts that the evidence at trial clearly establishes that the jury convicted Cordova on a theory of intentional murder-for-hire. <u>See</u> US Objections at 20-21. The United States further asks the Court to deny Cordova a certificate of appealability, because no reasonable jurist would find it debatable that Cordova's Firearm-Murder Enhancement conviction comports with <u>Borden v. United States</u>. <u>See</u> US Objections at 22.

## **LAW REGARDING OBJECTIONS TO RECOMMENDED DISPOSITIONS**

District judges may refer dispositive matters to Magistrate Judges to consider and recommend a disposition with proposed findings of fact as necessary. <u>See</u> 28 U.S.C. § 636; Fed. R. Civ. P. 72(b)(1). Once the Magistrate Judge enters the proposed findings and recommended

disposition, parties have fourteen days to file specific, written objections. Fed. R. Civ. P. 72(b)(2). The district judge then must review de novo any properly objected-to portion of the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). The de novo review standard does not foreclose the district judge from relying on the Magistrate Judge's findings. See United States v. Raddatz, 447 U.S. 667, 674 (1980). After review, the district judge may accept, reject, or modify the Magistrate Judge's recommendation, receive further evidence, or return the matter to the Magistrate Judge with further instruction. See United States v. Raddatz, 447 U.S. at 673-74 (citing 28 U.S.C. § 636(b)(1)).

A party's objections must be timely to preserve an issue for the district judge's review. See Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005). Under the "firm waiver rule," a district judge may adopt without review any improperly objected-to portion of a recommendation unless the interests of justice compel further consideration. Morales-Fernandez v. INS, 418 F.3d at 1119; Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). Justifying factors include a litigant's pro se status, efforts to comply with the objection process, the force and plausibility of any explanation for the failure to do so, and the objected issue's importance. See Morales-Fernandez v. INS, 418 F.3d at 1120. The "interest of justice" standard resembles a form of plain error review. See Morales-Fernandez v. INS, 418 F.3d at 1120.

## LAW REGARDING § 2255 HABEAS MOTIONS

Federal prisoners may collaterally challenge their convictions for violation of the United States Constitution or federal law, want of jurisdiction, excessive sentencing, or other recognized grounds. See 28 U.S.C. § 2255(a). Petitioners may not re-raise issues addressed in their direct appeal nor raise new issues that could have been brought with their direct appeal. See United

States v.  Warner, 23 F.3d 287, 291 (10th Cir. 1994).  Ineffective assistance of counsel claims and new Supreme Court decisions that retroactively apply to a petitioner's conviction are established grounds for a § 2255 challenge.  See Massaro v.  United States, 538 U.S. 500, 504 (2003); Schriro v.  Summerlin, 542 U.S. 348, 351 (2004).  A Supreme Court decision retroactively may invalidate a conviction when it narrows the class of individuals or conduct the relevant criminal statute penalizes.  See Schriro v.  Summerlin, 542 U.S. at 353.

If a petitioner successfully demonstrates an error in his or her conviction the next step depends on the nature of the error.  Some Constitutional errors, such as deprivation ,of counsel or a biased adjudicator, demand automatic reversal.  See United States v.  Dago, 441 F.3d 1238, 1244 (10th Cir.  2006).  Most other trial errors may be harmless.  United States v.  Dago, 441 F.3d at 1244.  In such cases, courts will not upset a conviction unless the error has a "substantial and injurious effect or influence" on the jury's guilty verdict.  United States v.  Dago, 441 F.3d at 1244 (applying the harmless error test established in Brecht v. Abrahamson, 507 U.S. 619 (1993) for 28 U.S.C. § 2254 petitions).

Regarding which party must demonstrate harmless error, Justice Stevens opined that the Brecht v. Abrahamson standard "places the burden on prosecutors to explain why [trial] errors were harmless."  Brecht v. Abrahamson, 507 U.S. at 640 (Stevens, J., concurring).  In O'Neal v.  McAninch, the Supreme Court holds that where a judge possessed "grave doubt" about an error's trial impact the judge should treat the error as if it did in fact substantially influence the verdict.  513 U.S. 432, 445 (1995).  However, O'Neal v.  McAninch clarifies that the "grave doubt" standard is not a question of shifting burdens of proof but rather an articulation of the legal standard for courts to apply to a case record.  O'Neal v.  McAninch, 513 U.S. at 437.  At the same time, O'Neal

v. McAninch cited to the common-law rule that the beneficiary of an error has "the burden . . . to prove there was no injury." O'Neal v. McAninch, 513 U.S. at 437 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). In a later decision, the Supreme Court recognizes O'Neal v. McAninch left open whether the burden of persuasion for harmless error fell to the State. Fry v. Pliler, 551 U.S. 112, 121 n.3 (2007).

The Tenth Circuit holds in a published decision that harmless error has no schema of burdens like those that occur with the presentation of evidence and instead constitutes a standard of review. See Sharp v. Rohling, 793 F.3d 1216, 1235 (10th Cir. 2015)(citing O'Neal v. McAninch, 513 U.S. at 437). But in an unpublished opinion a year later, the Tenth Circuit places the burden of persuasion on the government in habeas proceedings. United States v. Schneider, 665 F. App'x 668, 673 (10th Cir. 2016)). United States v. Schneider is consistent with Tenth Circuit decisions regarding harmless error review on direct appeal. E.g., United States v. Chavez, 976 F.3d 1178, 1204 (10th Cir. 2020); United States v. Holly, 488 F.3d 1298, 1307 (10th Cir. 2007)("It is well-established that the burden of proving harmless error is on the government.").

A petitioner is entitled to a hearing on the issues in their petition unless the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing therefore is unnecessary where a court determines conclusively issues in a motion by the parties' briefing and trial record. See United States v. Fields, 949 F.3d 1240, 1246 (10th Cir. 2019)(citing Machibroda v. United States, 368 U.S. 487, 494-95 (1962)).

A petitioner cannot appeal the final order in a § 2255 proceeding unless a circuit judge or justice issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1)(B). The petitioner must make a "substantial showing of the denial of a constitutional right" to qualify for a certificate. 28

U.S.C. § 2253(c)(2).  The petitioner need not demonstrate that he likely will succeed on appeal.  See Welch v. United States, 578 U.S. 120, 127 (2016).  Instead, reasonable jurists must be able to debate whether the district court could have resolved the petition differently or the issues otherwise must deserve encouragement to proceed further.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## LAW REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL

Defendants have a constitutional right to effective assistance of counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The right guarantees not the best counsel but a competent one.  Strickland v. Washington, 466 U.S. at 686.  To demonstrate ineffective assistance a petitioner must show his counsel's performance fell below an "objective standard of reasonableness" and prejudiced him by creating a reasonable probability the trial's outcome would have differed with better counsel.  Strickland v. Washington, 466 U.S. at 688, 694.  Courts may address either the "performance" prong or the "prejudice" prong first and failure to demonstrate either will dispose of the petitioner's claim.  Byrd v. Workman, 645 F.3d 1159, 1168 (10th Cir. 2011).

The performance prong is demanding, giving considerable deference to the discretion and strategy of counsel such that their decisions "must have been completely unreasonable, not merely wrong."  Byrd v. Workman, 645 F.3d at 1168 (quoting Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010)).  The failure of counsel to attempt meritless arguments does not qualify as ineffective assistance.  United States v. Babcock, 40 F.4th 1172, 1177 (10th Cir. 2022).  Especially on appeal effective counsel calls for dropping weaker arguments to focus on the few best ones for their client.  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  For the prejudice prong courts will generally review the record and evidence unimpacted by counsel's deficient performance to see if

it would still support the result reached by the jury.  See Frost v. Pryor, 749 F.3d 1212, 1227 (10th Cir.  2014); See also Bledsoe v. Bruce, 569 F.3d 1223, 1238 (10th Cir.  2009).

## LAW REGARDING CONSTRUCTIVE AMENDMENTS

Due process generally prohibits the prosecution from amending at trial the charges against the defendant by the indictment.  United States v. Koerber, 10 F.4th 1083, 1115 (10th Cir.  2021).[3] For analysis, amendments are categorized as explicit changes to the indictment, "simple variances," and "constructive amendments."  Hunter v.  New Mexico, 916 F.2d 595, 598-99 (10th Cir.  1990).  A simple variance occurs when the evidence at trial materially differs from the indictment's allegations.  United States v.  Koerber, 10 F.4th at 1115.  A simple variance will not warrant reversal unless the trial evidence does not support the charged offenses' elements.  Hunter v.  New Mexico, 916 F.2d at 599.  In contrast, a constructive amendment occurs when the trial evidence and jury instructions so alter the indictment's terms that the jury may have convicted the defendant for an uncharged offense.  See United States v. Farr, 536 F.3d 1174, 1180 (10th Cir.  2008).  Constructive amendments are per se grounds for reversal.  See United States v.  Farr, 536 F.3d at 1184.

Not every difference between what the prosecution includes in the indictment and what it presents at trial constitutes an amendment.  United States v.  Farr, 536 F.3d at 1181.  An indictment must fairly inform the defendant of the charges against which he must defend, contain the elements of those charges, and enable the defendant to "plead an acquittal or conviction in bar of future prosecutions for the same offense."  Hamling v.  United States, 418 U.S. 87, 117 (1974).  The

---

[3]The prohibition against constructive amendments is grounded in the Sixth Amendment right to receive notice of charges and the Fifth Amendment right to a grand jury indictment.  United States v.  Miller, 891 F.3d 1220, 1237 (10th Cir.  2018).

addition or deletion of nonessential factual averments at trial do not violate a defendant's due process rights.  See Hunter v. New Mexico, 916 F.2d at 599.  An indictment also need not specify the theory of liability a charged offense relies on, such as whether the defendant acted as a principal or accomplice to the crime.  See United States v. Rosalez, 711 F.3d 1194, 1210 (10th Cir. 2013).

### LAW REGARDING 18 U.S.C. § 924 AND BORDEN V. UNITED STATES.

First, the Court provides background on 18 U.S.C. § 924 and the Supreme Court's interpretations of the statute's elements in Borden v. United States.  Second, the Court discusses how the Tenth Circuit applies Borden v. United States to crimes requiring extreme recklessness and how the Courts of Appeals analyze VICAR under Borden v. United States.  18 U.S.C. § 924 codifies several penalty enhancements triggered by commission of a predicate crime under aggravating circumstances.  One enhancement, known as the Armed Career Criminal Act, 18 U.S.C. § 924(e), ("ACCA"), mandates a fifteen-year minimum sentence for any defendant who has three or more convictions for a "violent felony" and illegally possesses a gun.  18 U.S.C. § 924(e).  The act punishes the kind of habitual offender who would "deliberately point the gun and pull the trigger."  Borden v. United States, 593 U.S. at 423 (quoting Begay v. United States, 553 U.S. 137, 146 (2008)).

This provision provides multiple definitions of a violent felony, including certain crimes having "as an element the use, attempted use, or threatened use of physical force against the person of another . . . or otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another."  18 U.S.C. § 924(e)(2)(B)(bracketed language supplied).  That definition of a violent felony is nearly identical to the definition of a "crime of violence" in other statutory provisions. 18 U.S.C. § 16(a); 18 U.S.C. § 924(c)(3)(A).  The phrase "use . . . of physical force"

is referred to as the "elements clause," and the phrase "otherwise involves . . . a serious potential risk of physical injury" is referred to as the "residual clause" in various opinions. E.g., Borden v. United States, 593 U.S. at 446 (Thomas, J., concurring).

In 2004, the Supreme Court addresses the elements clause of a statutory crime of violence's definition contained in 18 U.S.C. § 16(a): "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Leocal v. Ashcroft, 543 U.S. 1, 9 (2004). The Supreme Court holds that the word "use" carries a degree of deliberateness with respect to a crime's mens rea, like the difference between using one's body to push someone versus stumbling into them. Leocal v. Ashcroft, 543 U.S. at 9. Therefore a crime which only requires a defendant to act negligently or accidentally cannot constitute a "crime of violence." Leocal v. Ashcroft, 543 U.S. at 9.

In Voisine v. United States, the Supreme Court analyzes the elements clause by which Congress defines a "misdemeanor crime of domestic violence." 579 U.S. 686, 689 (2016). That elements clause read that a misdemeanor crime of domestic violence "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii). The Supreme Court holds that reckless assaults satisfy the clause, because the mens rea of "recklessness" requires a conscious disregard of substantial risk created by one's actions. Voisine v. United States, 579 U.S. at 691-92. Voisine concludes that conscious disregard means a person would have to "use" physical force to create that risk, even if they do not intend the harm that could follow. Voisine v. United States, 579 U.S. at 694.

In a separate line of cases, the Supreme Court strikes down as unconstitutionally vague the residual clause in multiple statutes, including 18 U.S.C. § 924(c)(3)(B). See Johnson v. United

States, 576 U.S. 591, 597-98 (2015); United States v. Davis, 588 U.S. 445, 448 (2019).  As a result, the only valid definition of a crime of violence left under § 924(c) is its elements clause: "an offense that is a felony and has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  Between Leocal, Johnson, Voisine, and Davis, any definition of a violent crime that depends on a version of the elements clause requires, at minimum, a deliberate decision to endanger others.

Borden v. United States takes the analysis a step further in 2021.  Charles Borden, Jr., pleads guilty to a felon-in-possession charge and receives § 924(e)'s penalty enhancement for having three prior convictions for a "violent felony."  Borden v. United States, 593 U.S. at 424. Among the three is a Tennessee conviction for reckless assault.  Borden v. United States, 593 U.S. at 425.  Borden argues that an offense a person commits recklessly cannot constitute a "violent felony" under § 924(e)'s elements clause ,because, unlike the clause at issue in Voisine, § 924(e) includes the additional qualifier "against the person of another."  18 U.S.C. § 924(e)(2)(A).

With Justice Thomas concurring in the judgment, a plurality of the Court agrees with Borden.  Borden v. United States, 593 U.S. at 429, 445.  Justice Kagan's plurality opinion begins by discussing the Model Penal Code's classical hierarchy of mens rea.  Borden v. United States, 593 U.S. at 427.  In descending culpability, when a person causes some harm to another they may have (i) acted "purposefully" by consciously desiring that result; (ii) "knowingly" by being consciously aware that result would occur with "practical certainty"; (iii) "recklessly" by consciously disregarding a substantial and unjustifiable risk of that harm; or (iv) "negligently" by failing to realize such a risk exists with "gross deviation" from the norm of reasonable behavior. Borden v. United States, 593 U.S. at 426-27.

The plurality holds that the phrase "against another" means that the conduct penalized by the crime must have a target: "the general deployed his forces <u>against</u> a rival regiment, or the chess master played the Queen's Gambit <u>against</u> her opponent." <u>Borden v. United States</u>, 593 U.S. at 430 (emphasis added). Section 924(e)'s inclusion of "against another," therefore, means that the defendant must have a conscious object in mind for the physical force he uses, attempts to use, or threatens to use. <u>Borden v. United States</u>, 593 U.S. at 431. As a result, § 924(e) addresses crimes that penalize purposeful or knowing inflictions of harm but not reckless or negligent inflictions. See <u>Borden v. United States</u>, 593 U.S. at 431.

The plurality offers a hypothetical illustration. A person can purposefully drive their car straight at a "reviled neighbor" or knowingly run over a pedestrian amidst a high-speed chase. <u>Borden v. United States</u>, 593 U.S. at 432. In both instances the person would commit a violent felony under § 924(e) by targeting the person with their car. <u>Borden v. United States</u>, 593 U.S. at 432. However, a commuter who heedlessly speeds through a red light and hits an unspotted pedestrian has not acted "against" anyone. <u>Borden v. United States</u>, 593 U.S. at 432. The reckless commuter would not fit in with those who made "a deliberate choice of wreaking harm on another." <u>Borden v. United States</u>, 593 U.S. at 438. Consciously endangering others, even if it results in predictable injury, is insufficient to satisfy § 924(e)'s elements clause. See <u>Borden v. United States, 593 U.S.</u> at 432.

The plurality holds that the proper analysis is the "categorical approach." <u>Borden v. United States</u>, 593 U.S. at 424. Whether the facts of a particular defendants' actions prove that he used physical force against someone is of no consequence. <u>Borden v. United States</u>, 593 U.S. at 441. What matters is whether the least serious conduct that falls within the crime's scope satisfies the

elements clause of § 924(e).  See Borden v. United States, 593 U.S. at 441.  In other words, the inquiry is whether the prosecution must prove the defendant deliberately targeted someone with physical force for the jury to return a guilty verdict.  See Borden v. United States, 593 U.S. at 441-42.[4]  If the crime can be proven in any case without such evidence, then the crime falls out entirely from the category of "violent felony" for purposes of § 924(e).  Borden v. United States, 593 U.S. at 441-42.

    After Borden v. United States, the Supreme Court in United States v. Taylor addresses the elements clause as it appears in § 924(c) defining a crime of violence: "a felony [that] has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A); Taylor, 596 U.S. 845 (2022).  The issue is whether attempted robbery, under the Hobbs Act, qualifies as a crime of violence.  Taylor, 596 U.S. at 848.  Taylor does not present the same mens rea analysis as Borden v. United States but holds that the categorical approach applies to § 924(c)'s elements clause.  Taylor, 596 U.S. at 850.  With that resolved, the Supreme Court concludes that attempted Hobbs Act robbery does not satisfy the elements clause, because one could take the "substantial step" necessary to attempt Hobbs Act robbery without yet using, attempting, or threatening physical force against another person.  Taylor, 596 U.S. at 851.

## ANALYSIS

    First, Cordova does not suffer ineffective assistance, because his VICAR Murder charge according to the Indictment is not constructively amended.  Second, Cordova's Firearm-Murder

---

[4]Justice Thomas concurs by stating the plurality makes a "sound" conclusion regarding the elements clause but the result is wrong due to the Supreme Court's erroneous invalidation of § 924(c)'s residual clause.  Borden v. United States, 593 U.S. at 445, 447.

Enhancement, §§ 924(c), (j)(1), conviction is valid under <u>Borden v. United States</u>. The Court

concludes so because New Mexico second-degree murder requires a mens rea of knowledge, not

ordinary recklessness, and, thus, is a sufficient predicate crime of violence for the Firearm-Murder

Enhancement conviction. The Court, thus, denies Cordova's Habeas Motion.

## I.    CORDOVA DOES NOT SUFFER INEFFECTIVE ASSISTANCE BECAUSE THERE IS NO CONSTRUCTIVE AMENDMENT TO THE INDICTMENT'S <u>VICAR CHARGE.</u>

Magistrate Judge Ritter correctly concludes that Cordova's counsel is not ineffective for

forgoing a constructive amendment argument, because no such amendment occurred. <u>See</u> PFRD

at 9-10. Cordova points out that the Indictment does not mention Montoya's involvement in Dix's

murder or specify that Garcia does not participate in the murder himself. <u>See</u> Habeas Motion at 4.

Cordova argues that the United States, thus, impermissibly "altered and broadened the indictment"

by providing related evidence at trial. Cordova Objections at 1-2. The Tenth Circuit explains in

that a constructive amendment to an indictment is dangerous because "it actually modifies an

essential element of the offense charged" and therefore "effectively alters the substance of the

indictment." <u>Hunter v. New Mexico</u>, 916 F.2d at 599. Constructive amendments require reversal

because they allow the jury to convict the defendant on a different set of facts than those set forth

in the initial charging document. <u>Hunter v. New Mexico</u>, 916 F.2d at 599.

Magistrate Judge Ritter correctly concludes, however, that the United States does not

attempt to amend Cordova's charges, and therefore Cordova's counsel is not ineffective for

forgoing a constructive amendment argument. <u>See</u> PFRD at 9-10. Montoya's involvement and

Garcia's charges do not concern the allegations of Cordova's conduct nor change the theories of

liability that the Indictment charges. <u>See</u> PFRD at 9-10. In addition, even though the Indictment

does not mention Montoya by name, it does allege that: (i) Garcia hired one other person to kill Dix; (ii) Garcia used both Cordova and the other person to complete the murder; and (iii) Garcia paid Cordova and the other person heroin and cash.  See Superseding Indictment at 22.  In short, none of Cordova's examples of changes to the Indictment constitute constructive amendments of any kind that are reversible.  Because a constructive amendment challenge would fail, Cordova's counsel makes the competent decision to forego the argument.

## II.    CORDOVA'S    FIREARM-MURDER    ENHANCEMENT,    § 924(C),    (J)(1), CONVICTION IS VALID UNDER BORDEN V. UNITED STATES.

The Court disagrees with Magistrate Judge Ritter's recommendation and concludes that, under the Borden v. United States mens rea requirement that applies to Cordova's case, Cordova's Firearm-Murder Enhancement conviction is correct.  First, the Court explains how the Borden v. United States mens rea requirement applies to Cordova's Firearm-Murder Enhancement based on Tenth Circuit precedent.  Second, the Court explains that the VICAR Murder offense, which requires that Cordova intentionally or knowingly use deadly force against a person, is a predicate crime of violence for the Firearm-Murder Enhancement under Borden v. United States.  The Court, therefore, concludes that the jury instruction on VICAR Murder is correct, specifically the instruction on New Mexico second-degree murder.  Third and finally, the Court concludes that, even if New Mexico second-degree murder is insufficient to serve as a predicate crime of violence under Borden v. United States, the Court's error in instructing the jury on New Mexico second-degree murder is harmless.  A reasonable juror would find, given the weight of the evidence, that Cordova's murder of Dix is New Mexico first-degree murder, which is a sufficient predicate crime of violence for the Firearm-Murder Enhancement under Borden v. United States.

A.    **BORDEN V. UNITED STATES** APPLIES TO CORDOVA'S FIREARM-MURDER ENHANCEMENT.

Magistrate Judge Ritter concludes that Cordova's VICAR Murder conviction is not a sufficient crime of violence for the Firearm-Murder Enhancement, under Borden v. United States' narrowed requisite mens rea for a crime of violence.  See Amended Habeas Motion at 6; PFRD at 9.  The Firearm-Murder Enhancement, 18 U.S.C. § 924(c)(1)(A), is a sentencing enhancement for anyone who uses or carries a gun during a "crime of violence."  18 U.S.C. § 924(c)(1)(A).  The Firearm-Murder Enhancement then defines a crime of violence as a felony that either: "(A) has as an element the use of physical force against a person" or "(B) by nature involves substantial risk of physical force against a person."  18 U.S.C. § 924(c)(3)(A)-(B).  The first clause is known as "the elements clause," while the second is known as "the residual clause."  Borden v. United States, 593 U.S. at 445 (Thomas, J., concurring).  The Court briefly summarizes the relevant portions of Borden v. United States, as the Court describes previously in more detail in the Law Regarding 18 U.S.C. § 924 Section, supra at 17, to illustrate why Borden v. United States applies here.

The Firearm-Murder Enhancement's crime-of-violence elements clause is identical to the one that the Supreme Court analyzes in Borden v. United States.  In Borden v. United States, the Supreme Court looks at the "crime of violence" that the Armed Career Act, 18 U.S.C. § 924(e), defines as a violent felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  Borden v. United States, 593 U.S. at 424 (quoting 18 U.S.C. § 924(e)(2)(B)(i)).[5]  The Supreme Court concludes that a crime of violence must have

_____

[5]The Armed Career Criminal Act, 18 U.S.C. § 924(e), provides enhanced penalties for criminals convicted of certain firearms offenses who have at least "three previous convictions . . . for a violent felony or a serious drug offense."  18 U.S.C. § 924(e)(1).  Under the Armed Career Criminal Act, a violent felony either must have "an element the use, attempted use, or threatened

a purpose or knowledge mens rea, and explains its reasoning in detail.  Borden v. United States, 593 U.S. at 420.  First, the Supreme Court cites to its previous holding in Leocal v. Ashcroft that an offense requiring a negligent mens rea does not qualify as a crime of violence, because the phrase "crime of violence" "suggests a category of violent, active crimes that cannot be said naturally to include" negligent offenses.  Borden v. United States, 593 U.S. at 428 (quoting Leocal v. Ashcroft, 543 U.S. at 11).  Next, the Supreme Court concludes that "an offense requiring the 'use of physical force against the person of another,'" as the Armed Career Criminal Act's crime of violence definition requires, does not include offenses criminalizing reckless conduct.  Borden v. United States, 593 U.S. at 429 (quoting § 924(e)(2)(B)(i)).  The Supreme Court explains that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action act, or target, another individual.  Reckless conduct is not aimed in that prescribed manner."  593 U.S. at 429.  A person acts recklessly when he "consciously disregards a substantial and unjustifiable risk" that is in "gross deviation" from accepted standards.  Borden v. United States, 593 U.S. at 427 (quoting Model Penal Code § 2.02(2)(c)).  Reckless offenses, however, "fall within a different statutory definition -- this one lacking the 'against another' phrase that Leocal deemed 'critical.'"  Borden v. United States, 593 U.S. at 428 (quoting Leocal v. Ashcroft, 543 U.S. at 2).  The Supreme Court finally turns to knowing conduct, concluding that a "knowing" mens rea satisfies "against the person of another," unlike recklessness.  See Borden v. United States, 593 U.S. at 432.  The Supreme Court contrasts two hypothetical scenarios.  In the first, a "getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run

---

use of physical force against the person of another" or "involves conduct that presents a serious potential risk of physical injury to another."   18 U.S.C. § 924(e)(2)(B).

him over." Borden v. United States, 593 U.S. at 432. In this scenario, the driver's knowing

conduct satisfies the crime-of-violence element's clause, because the driver "consciously deployed

the full force of an automobile at another person." 593 U.S. at 432. In the second, a "commuter,

who, late to work, decides to run a red light, and hits a pedestrian whom he did not see." 593 U.S.

at 432. In this scenario, the driver's reckless conduct does not satisfy the crime-of-violence

element's clause, because

> the reckless driver has not directed force at another: He has not trained his car at
> the pedestrian understanding he will run him over. See [Brief for United States] at
> 26. To the contrary, his fault is to pay insufficient attention to the potential
> application of force. Because that is so -- because his conduct is not opposed to or
> directed at another -- he does not come with the elements clause. He has not used
> force "against" another person in the targeted way that clause requires.

Borden v. United States, 593 U.S. at 432.

Even though Borden v. United States discusses the requisite mens rea for the Armed Career

Criminal Act's crime-of-violence elements clause, the Court concludes that its holding also applies

to the Firearm-Murder Enhancement's crime-of-violence elements clause, and therefore applies to

Cordova's conviction, for three reasons. First, two clauses' plain language is identical. Second,

the Tenth Circuit applies the Supreme Court's holding in Borden v. United States to a Firearm-

Murder Enhancement conviction challenge in United States v. Kepler, 74 F.4th 1292, 1304 (10th

Cir. 2023). There, the Tenth Circuit concludes that federal second-degree murder, which includes

depraved-heart recklessness, is a crime of violence under the Firearm-Murder Enhancement's

elements clause, § 924(c)(3)(A) -- the identical clause at issue here. See United States v. Kepler,

74 F.4th at 1303. Third, Borden v. United States applies retroactively to prior convictions, because

the Tenth Circuit concludes that it does and the United States does not contest retroactive

application. See Toki, 23 F.4th at 1281. Because the Tenth Circuit in United States v. Kepler

applies <u>Borden v. United States</u> to a Firearm-Murder Enhancement conviction, and because <u>Borden v. United States</u> applies retroactively to Firearm-Murder Enhancement convictions, the predicate crime of violence that fulfills Cordova's Firearm-Murder Enhancement's elements clause must have a purpose or knowledge mens rea under <u>Borden v. United States</u>.

**B.    VICAR MURDER IS THE PREDICATE CRIME OF VIOLENCE FOR CORDOVA'S FIREARM MURDER ENHANCEMENT CONVICTION.**

Here, the Firearm-Murder Enhancement instructions require the jury to find, among other elements, that "Mr. Cordova is guilty of the offense charged in Count 2," <u>i.e.</u>, VICAR Murder. Jury Instructions at 39.   The predicate crime of violence for Cordova's Firearm-Murder Enhancement conviction, therefore, is the VICAR Murder conviction.  The Court instructs the jury that to find Cordova guilty of VICAR Murder, the jury must find that Cordova commits New Mexico's first or second-degree murder.

**1.    <u>The Jury Instruction on New Mexico First-Degree Murder is Correct</u>.**

For New Mexico first-degree murder, the United States must prove beyond a reasonable doubt that the "killing was with the deliberate intention to take away the life of Mr. Dix."  Jury Instructions at 34.  The parties do not dispute that New Mexico first-degree murder is a crime of violence under <u>Borden v. United States</u>' purpose or knowledge mens rea requirement, because the mens rea for New Mexico first-degree murder is purpose.   <u>See</u> NMSA 1978, § 30-2-1(A)(1)(defining a "willful," "deliberate," and "premeditated" killing); <u>Borden v. United States</u>, 593 U.S. at 432.  The Court concludes that the jury instruction on New Mexico first-degree murder is correct.

2.    **The Jury Instruction on New Mexico Second-Degree Murder is Correct.**

In this section, the Court scrutinizes whether New Mexico second-degree murder has a purpose or knowledge mens rea, as <u>Borden v. United States</u> requires, to be a crime of violence. The jury instructions state that, for New Mexico second-degree murder, the United States must prove beyond a reasonable doubt that "Mr. Cordova knew that his acts created a strong probability of death or great bodily harm to Mr. Dix." Jury Instructions at 34. The crucial question is whether New Mexico second-degree murder, as instructed, fulfills the crime-of-violence elements clause, which requires that the predicate crime of violence "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(c)(3)(A)-(B).

In <u>Borden v. United States</u>, the Supreme Court plurality explains that the "against" phrase in the Armed Career Criminal Act's elements clause incorporates a purpose or knowledge mens rea requirement, because, "[i]f not to incorporate an intent requirement, what function does that phrase serve?" 593 U.S. at 433. Here, New Mexico's second-degree murder, as instructed, has a knowledge mens rea requirement, because Cordova must "kn[o]w that his acts created a strong probability of death or great bodily harm to Mr. Dix." Jury Instructions at 34. This knowledge requirement is consistent with the incorporated purpose or knowledge requirement in the elements clause's "against" phrase in <u>Borden v. United States</u>. The New Mexico second-degree murder requirement, as instructed, requires that Cordova must have the knowledge that his acts would kill or significantly harm Dix. <u>See</u> Jury Instructions at 34. The requirement that Cordova "knew that his acts created a strong probability of death or great bodily harm" also aligns with the knowing mens rea of the hypothetical getaway driver in <u>Borden v. United States</u> who "sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over." 593 U.S. at 432. In both

the New Mexico second-degree murder instruction and the hypothetical getaway driver's scenario, the actor knowingly uses physical deadly force "against" a person, i.e., with intent to use physical deadly force towards a person.  18 U.S.C. § 924(e)(2)(B)(i).  In both scenarios, the actor knowingly uses force against a specific person that creates a strong probability of death.  Because the jury instruction on New Mexico second-degree murder requires a knowledge mens rea, it meets Borden v. United States's intent mens rea requirement to fulfill the crime-of-violence elements clause.

The New Mexico second-degree murder requirement is different from merely reckless conduct, which the Supreme Court defines as "consciously disregarding a substantial and unjustifiable risk that harm will occur."  Borden v. United States, 593 U.S. at 462.  The Supreme Court acknowledges that the "line between knowing and reckless crimes is thin," but the Honorable Brett Kavanaugh, Associate Justice of the United States Supreme Court, explains the difference in his dissent:

> The difference between (i) conduct with knowledge as to the consequences on the one hand and (ii) conduct with recklessness as to the consequences on the other hand is that the risk of harm associated with knowledge is somewhat higher than the risk of harm associated with recklessness.  In particular, to act with knowledge that harm will occur, a defendant must know that harm is "practically certain" to occur.  [Modern Penal Code] § 2.02(2)(b)(ii).  To act with recklessness as to whether harm will occur, a defendant need not know with practical certainty that harm will occur -- but he still must know that he is disregarding a substantial and unjustifiable risk that harm will occur.  Id., § 2.02(2)(c).  In other words, he must make a "deliberate decision to endanger another."  Voisine, 579 U.S. at [687], 136 S. Ct. 2272, 195 L.Ed. 2d 736.  As has long been recognized, the difference between knowledge and recklessness as to the consequences of one's actions is one of degree, not of kind.

Borden v. United States, 593 U.S. at 462 (Kavanaugh, J., dissenting).  Here, the New Mexico second-degree murder instruction requires that Cordova "knew that his acts created a strong probability of death or great bodily harm."  Jury Instructions at 34.  Second-degree murder as

instructed has a higher degree of awareness of the consequences than recklessness, which requires only that Cordova "know that he is disregarding a substantial and unjustifiable risk that harm will occur."  Borden v. United States, 593 U.S. at 462 (citing Modern Penal Code § 2.02(2)(c)).  The New Mexico second-degree murder instruction that Cordova must know that his acts create a strong probability of death or great bodily harm aligns with the Supreme Court's definition of knowledge: the defendant must know that harm is "practically certain" to occur.  Borden v. United States, 593 U.S. at 462.

### 3.    The Court Disagrees with Magistrate Judge Ritter's Assessment of the UJI's Statement on New Mexico Second-Degree Murder.

Magistrate Judge Ritter recommends that New Mexico second-degree murder does not constitute a crime of violence, because it includes reckless killings in its scope.  See PFRD at 11, 14.  Magistrate Judge Ritter relies on the fact that the New Mexico's UJI labels second-degree murder as "reckless killing."  PFRD at 11 (quoting NMRA UJI Crim. 14-210).  It is true that "[t]he Supreme Court of New Mexico's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law."  Back v. ConocoPhillips Co., 2012 WL 6846397, at *15 n.2 (D.N.M. Aug. 31, 2012)(Browning, J.)(citing State v. Wilson, 1994-NMSC-009, ¶ 5, 116 N.M. at 796, 867 P.2d at 1178).  The UJI's labeling of second-degree murder as "reckless killing," however, is not in the instruction itself.  Rather, the Committee Commentary footnote on element 2 states that "a reckless killing satisfies the statutory requirements" and cites to the Court of Appeals of New Mexico case State v. Carrasco, 2007-NMCA-152, 143 N.M. 62, 172 P.3d 611.  With respect to Uniform Jury Instructions Committee Commentary, the Supreme Court of New Mexico explains:

> In any event, the committee comment is not the law of New Mexico, see O'Hare v. Valley Utils., Inc., 89 N.M. 105, 112, 547 P.2d 1147, 1154 (Ct. App.)(stating that committee comments are not equivalent to the directions for use), rev'd on other grounds, 89 N.M. 262, 550 P.2d 274 (1976), and comments must stand on their own merit without implied endorsement of this Court.

Cress v. Scott, 1994-NMSC-008, ¶ 6, 117 N.M. 3, 6, 868 P.2d 648, 650-51.  See Grasshopper Natural Medicine, LLC v. Hartford Casualty Ins. Co., 2016 WL 4009834 at *31 (D.N.M. July 7, 2016)(Browning, J.)(quoting Cress v. Scott to conclude that the committee commentary at issue "stands on its own merit").  The Court, therefore, does not accept the Committee Commentary's statement as a correct, binding statement of the law.  For the reasons stated above explaining that the New Mexico second-degree murder instruction requires an intent mens rea, as opposed to merely recklessness, the Court concludes that here, the Committee Commentary does not stand on its own merit.

While a federal court saying that Cordova's Firearm-Murder Enhancement conviction should be overturned because second-degree murder includes reckless killings appears to be a liberal decision and pro-defendant, recommendation actually is being very harsh to Defendants in New Mexico.  If every defendant in New Mexico can be convicted of second-degree murder on a mere finding of recklessness, that would be an improper lowering of the bar in New Mexico and can change the standard of the criminal justice system in New Mexico.  The Court thinks that most States do not do what the recommendation did when applying the language of the UJI, and do not get into the weeds of the comments.  For the Court to apply a standard to Cordova, it must be consistent with the legal standards in place.

Even if the Committee Commentary carries the same authoritative weight as the UJI's legal statements, its correctness is a rebuttable presumption.  See State v. Wilson, 1994-NMSC-009, ¶ 5,

116 N.M. 793, 867 P.2d 1175, 1178.  Here, a presumption that the UJI correctly labels second-degree murder as reckless killing is rebutted, because it lacks authority and contradicts the Supreme Court of New Mexico's consistent stance that the mens rea for murder is intent, while the mens rea for manslaughter is recklessness.  First, in the Committee Commentary's cited case State v. Carrasco, the Court of Appeals of New Mexico concludes the opposite: that second-degree murder does not include reckless killings.  See 2007-NMCA-152, ¶ 7.  There, the defendant, Carrasco, challenges his attempted-second-degree-murder conviction, arguing that he is convicted of "the legally inadequate charge of attempted second degree reckless, unintentional murder" and thus, the jury instruction on second-degree murder is incorrect for including recklessness.  2007-NMCA-152, ¶ 1, 143 N.M. at 63, 172 P.3d at 612 .  The jury instruction to convict Carrasco of New Mexico's second-degree murder requires that the Carrasco "knew that his acts created a strong probability of death or great bodily harm" to the victim.  2007-NMCA-152, ¶ 9, 143 N.M. at 65, 172 P.3d at 614.  The Court of Appeals of New Mexico concludes that the second-degree murder instruction is proper, because it requires that the jury find the defendant guilty "only if he intended to kill his ex-wife" and "acted with the requisite knowledge."  2007-NMCA-152, ¶ 10, 143 N.M. at 65, 172 P.3d at 614.  Further, the Court of Appeals of New Mexico concludes that "we do not read into this argument, as Defendant suggests, that the jury could convict Defendant without finding an intent to kill," and, "[a]t no time did the prosecutor argue, or intimate, to the jury that the jury could convict Defendant of attempted second degree murder based on a reckless or unintentional standard."  2007-NMCA-152, ¶ 13, 143 N.M. at 65, 172 P.3d at 614.  State v. Carrasco makes explicit that the mens rea for second-degree murder is intent, not recklessness.

The Supreme Court of New Mexico concludes similarly; it explains that "[m]alice required for murder, both first and second degree, as opposed to manslaughter, is an intent to kill or an intent to do an act greatly dangerous to the lives of others or with knowledge that the act creates a strong probability of death or great bodily harm." State v. Ortega, 1991-NMSC-084, ¶ 32, 112 N.M. 554, 565, 814 P.2d 1196, 1207. In contrast to malice, the UJI defines recklessness as when an actor "knew that his conduct created a substantial and foreseeable risk, that he disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others." NMRA UJI Crim. 14-1704. Whereas malice at the least requires knowledge that an act creates a "strong probability" of "death or great bodily harm," State v. Ortega, 1991-NMSC-084, ¶ 32, 112 N.M. at 565, 814 P.2d at 1207, recklessness requires only knowledge that an act creates a "substantial and foreseeable . . . risk," NMRA UJI Crim. 14-1704. Finally, the UJI's second-degree murder elements and the identical Jury Instructions in United States v. Baca reflect State v. Ortega's definition of "malice" and an intent mens rea: element 2 specifically requires "[t]he defendant knew that his acts created a strong probability of death or great bodily harm to _____ (name of victim) [or any other human being]." (Court adds first brackets, second brackets in original). NMRA UJI Crim. 14-210.

In New Mexico, involuntary manslaughter, not second-degree murder, aligns best with a recklessness mens rea. See NMRA UJI Crim. 14-231. The UJI instruction for involuntary manslaughter requires criminal negligence, meaning that the defendant "should have known of the danger involved by [the defendant's] actions" and "acted with a willful disregard for the safety of others." NMRA UJI Crim. 14-231. The UJI defines criminal negligence as existing when a person acts "with willful disregard of the rights or safety of others and in a manner which endanger[s] any

person or property." NMRA UJI Crim. 14-133. The UJI's definition of criminal negligence aligns with its definition of recklessness: when an actor "knew that his conduct created a substantial and foreseeable risk, that he disregarded that risk and that he was wholly indifferent to the consequences of his conduct and to the welfare and safety of others." See NMRA UJI Crim. 14-1704. The Supreme Court of New Mexico also explicitly states that "[t]he showing of criminal negligence required for an involuntary manslaughter jury instruction includes the concept of recklessness." State v. Henley, 2010-NMSC-039, ¶ 16, 148 N.M. 359, 363, 237 P.3d 103, 107.

Criminal homicide classification based on intent or recklessness is not unique to New Mexico. That the most culpable homicide -- murder -- requires intent, is a fundamental tenet of American criminal law. In jurisdictions that subdivide murder into degrees, the most heinous homicide with "intent-to-kill" malice is a first-degree murder, while a homicide that lacks "intent-to-kill" malice but contains "intent-to-cause-great-bodily-harm" malice usually falls into second-degree murder. Jens David Ohlin, Wharton's Criminal Law § 21.2 (16th Ed. 2024). See e.g., State v. Corley, 703 So. 2d 653, 661-62 (La. Ct. App. 3d Cir. 1997)(explaining that second-degree murder requires that the defendant act with intent to "inflict great bodily harm"); Com. v. Buzard, 365 Pa. 511, 516-17, 76 A.2d 394, 396-97 (1950)(affirming second-degree murder conviction because there is enough evidence of "the defendant's intent to do the victim great bodily harm").

As for manslaughter, common law and many state statutes define it as an unlawful homicide without malice aforethought, Jens David Ohlin, Wharton's Criminal Law § 22.1 (16th Ed. 2024), and the absence of malice "marks the boundary which separates the two crimes of murder and manslaughter." See Wallace v. United States, 162 U.S. 466, 476 (1986). In most jurisdictions that do not define murder with reference to malice, involuntary manslaughter requires

that the defendant acted recklessly.  <u>See</u> Jens David Ohlin, Wharton's Criminal Law § 22.1 (16th Ed. 2024).  <u>See</u> <u>also</u> Conn Gen Stats, § 53a-56 (describing second-degree manslaughter as when a person "recklessly causes the death of another person").  Furthermore, the Model Penal Code ("MPC") § 210.2 defines murder as a criminal homicide "committed purposely or knowingly" or "committed recklessly under circumstances manifesting extreme indifference to the value of human life," <u>i.e.</u>, extreme recklessness.  MPC § 210.2(1)(a)-(b).  By contrast, the MPC defines manslaughter as a killing "committed recklessly."  MPC § 210.3(1)(a).

The Court, therefore, departs from Magistrate Judge Ritter's reliance on the nonbinding UJI Committee Commentary that labels second-degree murder as "reckless killing" which cites to a lower New Mexico State court case concluding the opposite.  In summary, the plain language of the New Mexico second-degree murder UJI requires a knowledge mens rea, the identical jury instruction in this case requires a knowledge mens rea, the New Mexico Supreme Court and the New Mexico Court of Appeals conclude that a recklessness mens rea does not apply to second-degree murder, and it is a well-established criminal law principle that murder has an intent mens rea whereas manslaughter has a recklessness mens rea.  The New Mexico second-degree murder's mens rea requirement of knowledge, as instructed, properly establishes New Mexico second-degree murder as a crime of violence under <u>Borden v. United States</u>.

## III.    EVEN IF THE JURY INSTRUCTION ON NEW MEXICO SECOND-DEGREE MURDER IS INCORRECT UNDER BORDEN V. UNITED STATES, THE ERROR <u>IS HARMLESS</u>.

First, the Court explains why the parties have waived all newly raised objections except for the United States' harmless-error objection.  Second, the Court addresses the harmless-error

objection, and concludes that an incorrect jury instruction on New Mexico second-degree murder is harmless error. The Court, therefore, upholds the Firearm-Murder Enhancement conviction.

> ### A.    THE COURT DEEMS THAT THE PARTIES HAVE WAIVED ALL NEWLY RAISED OBJECTIONS EXCEPT FOR THE UNITED STATES' HARMLESS-ERROR OBJECTION.

The parties make several new objections which they do not present in their original briefing. For Cordova, these objections include: (i) insufficient evidence links Cordova to the crime; (ii) the United States uses improper leading questions with Montoya; (iii) the jury instructions do not define "murder-for-hire" or distinguish "associate" from "accomplice"; (iv) the Court had a hearing regarding an interview between Garcia and Federal Bureau of Investigation ("FBI") agents without Cordova present; and (v) Cordova's counsel did not interview key witnesses. Compare Cordova Objections at 1-4, with Amended Habeas Motion at 5-10. Cordova also filed his objections, both new and previously raised, after the deadline expired. See Cordova Objections at 1. For the United States, these arguments include: (i) Cordova defaulted on his Borden v. United States challenge, because the Supreme Court issued the decision before the completion of his direct appeal's briefing schedule; and (ii) any error in the jury instruction on the Firearm-Murder Enhancement is harmless. Compare US Objections 5-6, 15-21, with Habeas Response at 10-11. Under the firm waiver rule, the Court may deem that the parties waive these arguments unless the interests of justice warrant consideration. See Morales-Fernandez v. INS, 418 F.3d at 1119. Neither party argues interest-of-justice grounds. With respect to Cordova's objections' timeliness, however, Cordova explains the effect of delays within his prison's mailing system. See Motion for Extension of Time at 1, filed November 4, 2024 (Doc. 27).

Cordova's new arguments do not present issues so important and obvious that failure to consider them would be an injustice. Cordova already has made several unsuccessful challenges to the evidence in his trial and does not explain why he did not make his new ineffective assistance arguments in his original petition. As to arguments that relate to the constructive amendment issue, Cordova does not cite to any improper conflation of "associate" and "accomplice" in the jury instructions. Jury Instructions at 31; Tenth Circuit Criminal Pattern Jury Instruction § 2.06 (2023). The Jury Instruction's failure to discuss "murder-for-hire" also does not prove a constructive amendment of the indictment occurred. The VICAR charge only requires the United States to prove Cordova committed "murder" on SNM's behalf in exchange for pecuniary value or advancement with the enterprise, and the jury found that the United States proved those elements. Jury Instructions at 26; Verdict at 1. The Court, however, considers Cordova's Objections connected to his original arguments in his Habeas Motion. Despite the untimeliness of Cordova's filing, his pro se status, his signature indicating he submitted his objections for mailing on October 31, 2024, and delays with the prison mailing system warrant leeway. Habeas Motion at 6; Morales-Fernandez v. INS, 418 F.3d at 1120.[6]

As to the United States' new arguments, the interests of justice warrant consideration of the harmless error objection. Brecht v. Abrahamson adopts the harmless error standard to protect the heightened interest in finality with respect to habeas challenges. See Brecht v. Abrahamson, 507 U.S. at 621 (stating that habeas only aid those "grievously wronged"). Caselaw is unclear

---

[6]Cordova filed a motion requesting to respond to the United States' objections. See Motion to reply to U.S. Government (Doc. 29) Proposed Findings and Recommended Disposition under 2255, filed December 9, 2024 (Doc. 31). Because the motion raises no new responses not already contained in Cordova's objections or the proposed recommendation, the Court denies the motion as moot.

whether the State must invoke harmless error, or whether courts can apply harmless error as a standard of review.  Compare Fry v. Pliler, 551 U.S. at 121 n.3, with O'Neal v. McNinch, 513 U.S. at 437.  Nevertheless, consideration of harmless error is appropriate here.

**B.    EVEN IF THE JURY INSTRUCTION ON VICAR MURDER IS INCORRECT UNDER BORDEN V. UNITED STATES, IT IS HARMLESS ERROR.**

The United States argues that, if New Mexico second-degree murder requires only a showing of ordinary recklessness, it is still harmless error to instruct the jury that Cordova's VICAR Murder offense is a crime of violence for purposes of § 924(c).  See United States' Objections at 18-21.  The United States' argument is that, because VICAR Murder requires proof of generic murder, and the United States satisfies that proof with a murder-for-hire theory, and generic murder satisfies Borden v. United States, the jury still would have found Cordova guilty under § 924(c) if properly instructed.  See United States' Objections at 18-21.

Jury instructions are meant to "give jurors the correct principles of law applicable to the facts so that they can reach a correct conclusion as to each element of an offense according to the law and the evidence."  United States v. Kahn, 58 F.4th 1308, 1317 (10th Cir. 2023).  "Even when the district court fails to include an element of the crime in the instruction (including a mens rea element), we still apply the harmless error rule, asking 'whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'"  United States v. Sorensen, 801 F.3d 1217, 1229 (10th Cir. 2015)(quoting Neder v. United States, 527 U.S. 1, 15 (1999)).  "It is well-established that the burden of proving harmless error is on the government."  United States v. Holly, 488 F.3d 1298, 1307 (10th Cir. 2007).  "If it is 'clear beyond a reasonable doubt that a rational jury would have' rendered the same verdict 'absent the error,' then the error

did not contribute to the verdict, and, therefore, the error is harmless." United States v. Freeman, 70 F.4th 1265, 1280-81 (10th Cir. 2023)(quoting Neder v. United States, 527 U.S. at 18).

Here, the Court agrees that the United States' evidence shows that Cordova commits intentional murder. E.g., Trial Doc. 1051, at 24-27. Montoya testifies at trial that on the night of the Dix murder, he and Cordova drove around town in Cordova's maroon Pontiac while smoking crack, and located Dix at a Chevron station on Isleta Boulevard. See Transcript of Excerpt of Testimony of Mario M. Montoya at 64:1-15 (taken July 12-13, 2018)(Castellano, M. Montoya); filed July 17, 2018 (Doc. 843)("Montoya Tr."); id. at 137:8-10 (Morrissey, Montoya); id. at 79:7-8 (M. Montoya). Montoya testifies that he and Cordova ask Dix if he can get them drugs, see Montoya Tr. at 65:21-66:16 (Castellano, M. Montoya), and that, after Dix leaves, Cordova and Montoya follow him, see id. at 67:23-68:3 (Castellano, M. Montoya). Montoya then testifies that they stop their car immediately in front of Dix's van so the cars form a "T." Montoya Tr. at 68:23-69:13 (Castellano, M. Montoya); id. at 69:16-20 (Castellano, M.  Montoya). Then, Montoya testifies that Cordova asks Dix who is with Dix, and, when Dix answers that no one is with him, Cordova fires at Dix. See Montoya Tr. at 70:12-21 (Castellano, M. Montoya). Montoya describes that Cordova fired a lot of shots, then paused, during which time Montoya "was about to take off," and then Cordova started shooting again. Montoya Tr. at 70:18-21 (M. Montoya). According to Montoya, Cordova then told Montoya to drive, and Montoya drove slowly away from the scene. See M. Montoya Tr. at 70:22-71:6 (Castellano, M. Montoya).

A rational juror would view this murder-for-hire killing as having been done purposefully and knowingly, as opposed to recklessly. The evidence shows that Cordova agreed to murder Dix at Garcia's request and that Cordova performs the murder by deliberately pointing his gun towards

Dix.  Even if New Mexico second-degree murder incorporates a recklessness mens rea, and thus does not require the United States to prove "purposeful and knowing conduct" in Cordova's killing, Borden v. United States, 593 U.S., at 430-32, 434, a rational jury could not have found ordinary-recklessness murder given the evidence.  The parties do not dispute that New Mexico first-degree murder is a crime of violence under Borden v. United States, because the mens rea for New Mexico first-degree murder requires intent.  See NMSA 1978, § 30-2-1(A)(1)(defining murder in the first degree as a "willful," "deliberate," and "premeditated" killing).

A Borden v. United States error does not have an automatic prejudicial effect on the jury's verdict.  The Tenth Circuit holds similarly where, given the evidence, a jury would have rendered the same verdict regardless of the error in the jury instructions.  See United States v. Freeman, 70 F.4th at 1283-84.  In United States v. Freeman, the defendant argues that the jury instructions for the elements of sexual abuse under 18 U.S.C. § 2242 omit the essential element of the victim's incapacity.  See 70 F.4th at 1277; 18 U.S.C. § 2242(2) (making it unlawful to engage in a sexual act with a person if that person is "incapable of appraising the nature of the conduct," or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act").  The Tenth Circuit ultimately concludes that the district court does not omit the element, but even if it omits this element, such error is harmless "in light of the overwhelming evidence of Doe's incapacity" within the meaning of the Sexual Abuse statute, § 2242(2).  United States v. Freeman, 70 F.4th at 1279, 1283.  The Tenth Circuit describes the "overwhelming evidence" that the victim is asleep at the time that the defendant assaults her and the "overwhelming evidence" that the victim is intoxicated from alcohol consumption.  United States v. Freeman, 70 F.4th at 1283-84.  It is thus "clear beyond a reasonable doubt that a rational jury would have found the

defendant guilty absent the instructional error." United States v. Freeman, 70 F.4th at 1284 (quoting Neder v. United States, 527 U.S. at 18).

Here, the Court concludes that any error here is harmless based on similar reasoning.  Like the overwhelming evidence that proves the omitted element beyond a reasonable doubt in United States v. Freeman, here, the overwhelming evidence also shows that Cordova kills Dix purposefully -- not recklessly -- through Garcia's murder-for-hire operation.  Any error in the VICAR murder instruction that allows a predicate crime of violence to have a recklessness mens rea is harmless, because it is "clear beyond a reasonable doubt" that a rational jury would have found Cordova guilty of New Mexico first-degree murder even absent an instructional error. United States v. Freeman, 70 F.4th at 1284.  Ultimately, however, because the Court concludes that New Mexico second-degree murder requires a purpose or knowledge mens rea, Cordova's VICAR Murder instruction which incorporates New Mexico second-degree murder is proper under Borden v. United States.  The Court affirms Cordova's Firearm-Murder Enhancement, §§ 924(c), (j)(1) conviction under both Borden v. United States and harmless error review.[7]

---

[7]The Court additionally notes that, even if Cordova's conviction on the Firearm-Murder Enhancement were vacated, Cordova's sentence would still be life imprisonment.  The jury finds Cordova guilty on Counts 2 and 3 of the Superseding Indictment.  See Verdict at 1-2. Count 2 charges Violent Crimes in Aid of Racketeering (Murder), 18 U.S.C. § 1959(a)(1), i.e., VICAR Murder, and Count 3 charges Causing Death Through Use of Possession of a Firearm, 18 U.S.C. §§ 924(c) and 924(j)(1), i.e., the Firearm-Murder Enhancement.  See Original Indictment at 50; Indictment at 53-54.  The statutory penalty for VICAR Murder is death or life imprisonment.  See 18 U.S.C. § 1959(a)(1).  The statutory penalty for the Firearm-Murder Enhancement is any term of years or for life. See § 924(j)(1).  On September 13, 2019, the Court sentenced Cordova to life imprisonment.  See Sentencing Minute Sheet at 1, filed September 13, 2019 (Doc. 1123).  As to Count 2, VICAR Murder, the Court imposes a "term of life," and as to Count 3, the Firearm-Murder Enhancement, the Court imposes a "term of life."  Sentencing Minute Sheet at 1.  The Court imposes the life sentences to run concurrently for a total term of life.  See Sentencing Minute Sheet at 1.  Accordingly, even if the conviction on Count 3, the Firearm-Murder Enhancement,

**IT IS ORDERED** that: (i) Magistrate Judge Ritter's Proposed Findings and Recommended Disposition at 1, filed October 17, 2024 (Doc. 24), is adopted in part; (ii) Defendant Anthony Cordova's § 1959 conviction remains valid; (iii) Cordova's Firearm-Murder Enhancement, § 924(c), (j)(1), conviction, remains valid; and (iv) this case is dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel and parties:*

Anthony Cordova
Adelanto, California

    *Plaintiff pro se*

Ryan Ellison
  United States Attorney
Randy M. Castellano
Maria Y. Armijo
Ryan G. Ellison
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

    *Attorneys for the Defendant*

---

were vacated, the statutorily required life sentence on Count 2, VICAR Murder, would still remain. Cordova's sentence, therefore, is still life imprisonment.